JUNE TERM, 1848.

THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* THE
BALTIMORE AND OHIO RAIL-ROAD COMPANY.

In 3 *Howard Rep*. 133, *the Supreme Court of the United States* say of a franchise
for banking when bought, "the price is paid for the use of the privilege
whilst it lasts, and any tax upon it would substantially be an addition to the
price." If by this was meant a *special legislative charge or imposition upon
the franchise*, the correctness of the principle could not be denied; and if it
meant a special tax, *technically speaking*, levied for the support of the gov-
ernment of *Maryland*, it would be void, as repugnant to 13th Article of the
*Declaration of Rights of Maryland.*

If, as must be done, the *Supreme Court of the United States* are to be under-
stood as speaking in reference to the *general tax*, laid upon *all* property
within the State, under the act of 1841, ch. 23, then the proposition referred
to, as asserted by that court, cannot be maintained.

A franchise as property, is, according to its value, liable to taxation for the
support of government, whether paid for by a *bonus* or not.

The burden or bonus imposed by the charters, or acts reviving the charters of
banks in *Maryland*, was not a tax upon the fair value of the privilege or
franchise, when granted by the legislature, but the price to be paid or fine
levied, for the right of exercising the powers and enjoying the immunities
conferred by the charter. It was not a tax for the support of government.

No valuable consideration is necessary to the validity of a legislative grant.

The right of taxation is never presumed to be surrendered by the sovereign
power; and such surrender is never made, unless it be the result of express
terms, or necessary inference.

Under the true construction of the 13th Article of our Bill of Rights, we can-
not presume that a franchise, if the subject of taxation, may, by its excessive
exercise, be destroyed or rendered valueless.

This tribunal is bound to submit to the judicial decisions of the Supreme
Court of the *U. S.* involving the true construction of the Constitution,
treaties, and laws of the *U. S.* Yet there is no obligation on it to acqui-
esce in the *dicta* of that tribunal, not necessarily established by the matters
by it adjudicated.

The charter of the *Baltimore and Ohio R. R. Co.*—act of 1826, ch. 123, sec.
18, declares that the shares of the capital stock of that Company shall be
considered *personal* estate, and exempt from the imposition of any tax or
burthen.

The State's right to tax that stock, and the right of all corporations created by
the State to tax it, is excluded by the comprehensive and universal terms of
the exemption.

The specific property of a corporation is as much an ingredient in the shares of its stock, and component part of their value, as is any portion of the corporate property. In the case of the *Baltimore and Ohio R. R. Co.* both are exempt from taxation.

The right to tax the stock or the specific property of the *Baltimore and Ohio R. R. Co.* was not re-invested in the State by the act of 1835, ch. 395, sec. 13.

APPEAL from *Baltimore* County Court.

This was an action of. *assumpsit*, brought to *January* term, 1846, by the appellants against the appellees. The defendants pleaded *non-assumpsit*. A verdict was rendered for them, when the plaintiffs prosecuted this appeal.

At the trial of the cause, the plaintiffs, to support the issue on their part, offered in evidence the acts of the General Assembly of *Maryland*, and the Ordinances of the *Mayor and City Council of Baltimore*, relating to taxation in the State or City of *Baltimore*; and also the act of the General Assembly of December session, 1835, ch. 395.

The defendants, to support the issue on their part, offered in evidence their charter, passed at December session, 1826, ch. 123, and all the supplements thereto, and all the laws and ordinances of said City relating to the defendants.

It was admitted that the defendants owned real and personal estate, and shares of their own stock in the City of *Baltimore* that would be liable to tax, and the tax on which would amount to $100, except for the exemption claimed by them, and denied by the plaintiffs. It was admitted that the charter of the defendants has been assented to, according to its terms, by the States of *Pennsylvania* and *Virginia*, and by the *United States*, as legislature of the *District of Columbia*. It was admitted, that if in the opinion of the court, the stock in the hands of an individual holder would be liable to taxation, the judgment of this court shall be entered in favor of the plaintiffs for $101 and costs.

Whereupon, the plaintiffs prayed the court to instruct the jury:—

1st. That the real estate of the *Baltimore and Ohio Railroad Company*, the defendants, situate in the City of *Baltimore*, is liable for City taxes.

37     v.6.

2d. That the personal property of the *Baltimore and Ohio Rail-road Company,* situate in the City of *Baltimore,* is liable for City taxes.

3d. That the capital stock of the *Baltimore and Ohio Rail-road Company,* the defendants, is liable for City taxes.

4. That the shares of the capital stock of the *Baltimore and Ohio Rail-road Company* in the hands of the share-holders, is liable for City taxes.

The court, (PURVIANCE, A. J.) refused to grant each and all of said prayers. The plaintiffs excepted.

It is agreed in this cause that the counsel may, in the appellate court, read from the printed volume of the Laws or Ordinances of the City of *Baltimore,* all such laws and parts of laws or ordinances as either may desire, for the purpose of argument or illustration, to have the same effect as if such laws, or parts of laws, or ordinances, had been set forth at length in the bill of exceptions.

The cause was argued before DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By B. C. PRESSTMAN for the appellants, and

By JOHN H. B. LATROBE and REVERDY JOHNSON for the appellees.

DORSEY, J., delivered the opinion of this court.

The conclusive influence on the case before us, which, by the counsel of the appellants, has been attributed to the cases of *Gordon vs. The Appeal Tax Court,* and *Cheston vs. The Appeal Tax Court,* in 3 *Howard's Reports,* 133, &c., is not admitted. As grounds to support the opinion it gave, the Supreme Court say, that a franchise for banking, when bought, "the price is paid for the use of the privilege whilst it lasts, and any tax upon it would substantially be an addition to the price." And in the progress of its opinion, it also says that "the franchise is their (meaning the banks) corporate property, which like any other property would be taxable, if a price had not been paid for it, which the Legislature accepted as the con-

sideration for allowing them to use the franchise during the continuance of their charters. If in the first extract from their opinion, the Supreme Court meant a special legislative charge or imposition upon the franchise, the correctness of the principle could not be denied; and if it meant a special tax, technically speaking, levied for the support of the government of *Maryland*, it would be clearly unconstitutional and void, as being repugnant to the 13th Article of the Declaration of Rights, which declares "that every person in the State ought to contribute his proportion of public taxes for the support of government, according to his actual worth in real or personal property within the State."

But if, as must be done, the Supreme Court are to be understood as speaking in reference to the general tax laid upon all property within the State under the act of 1841; then it is respectfully insisted, that the proposition referred to, as asserted by the Supreme Court, cannot be maintained; and that the franchise, as property, is, according to its value, liable to taxation for the support of government, whether paid for by a bonus, or not. In support of this judicial postulate of the legislative intent, as adopted by the Supreme Court, no authority has been referred to, and for it, no satisfactory reason has been assigned.

What was the burden or bonus imposed by the charters, or the acts of Assembly renewing the charters of the banks? Not a tax, in the appropriate sense of the term, upon the fair value of the privilege or franchise, when granted by the legislature; but the price to be paid, or fine levied by legislative discretion, for the right of exercising the powers and enjoying the immunities conferred by the charter. It was not a tax levied upon the franchise, or its value, after its creation, for the support of the government. If so regarded, it would be unconstitutional and illegal under the 13th Article of the Declaration of Rights. According to the true import of the term, it is no tax; but a price or condition, arbitrarily or discretionally fixed by the legislature as the consideration for its grant. The exaction of such bonus had no reference, and bore no analogy

to the transcendental power or right of the legislature to levy taxes for the support of government. It emanated from the exercise of no such power. It was the mere proposal or offer of a bargain or contract by the legislature, which might be accepted or rejected at the discretion of those to whom the offer was made. It bears not the semblance of resemblance to the rigid principles of taxation, where the sovereign will of the legislature, acting constitutionally, governs and commands every thing, leaving nothing to the discretion of others.

In granting such charters of incorporation, whether with or without a bonus, the legislature never, for one moment, suppose that they are in any degree impairing the State's eminent right of taxation; or that their acts could have the slightest bearing upon such a question. But for this decision of the Supreme Court, it might well have been supposed, both on reason and authority, that the right of the State to tax a franchise of value, which its legislature had granted to a corporation, was as undeniable where a bonus had been paid, as if the grant had been unattended by a bonus. No valuable consideration is necessary to the validity of a legislative grant. The intention of the legislature is the all-controlling principle by which the construction of its enactment is to be governed,—and nothing is more conclusively established, as well by the decisions of the Supreme Court of the *United States*, as by those of *Maryland* and of other judicial tribunals, than that the right of taxation is never presumed to be surrendered by the sovereign power,—and that such surrender is never made, unless it be the result of express terms, or necessary inference. The argument is wholly unsound when applied to *Maryland*, that a franchise, if subject to taxation, may by its excessive exercise be destroyed or rendered valueless; because by the 13th Article of the Bill of Rights, the legislature can impose no tax upon it which is not equally borne by every other species of property in the State, in proportion to its value. To infer that the legislature, by the exaction of a bonus, as the condition of a grant of corporate powers, had by implication divested itself of one of its most important rights of eminent domain,

is, to say the least of it, not an implication resulting from necessity. And it might with some show of reason, be contended, that the legislative exaction of a bonus, instead of evincing peculiar favor towards the corporation, and a willingness to make all concessions which might conduce to its benefit, or promote the accomplishment of its objects, rather evinces a contrary disposition.

From the aforegoing remarks, it must not be understood that there is in this tribunal the slightest disposition to withhold its full acquiescence and submission to the judicial decisions of the Supreme Court of the *United States,* involving the true construction of the Constitution, treaties, and laws of the *United States*—yet there is no obligation on this court to acquiesce in the *dicta* of the Supreme Court, not necessarily established by the matters by it adjudicated. As for example, this court is bound to conform and give effect to the judgments of the Supreme Court in the case of *Gordon vs. The Appeal Tax Court,* and *Cheston vs. The Appeal Tax Court,* reported in 3 *Howard,* 133. But it is not bound to admit the *dictum* in the Supreme Court's opinion, that by requiring a bonus for a charter of incorporation, the legislature surrenders its right to tax the franchise in common with all other property in the State; the judgments of that court in those cases being sustainable on other, and as appears to us, more obvious grounds: and in doing so, it is conceived that this court is supporting, rather than impugning, the Supreme Court's judgments in the case of *Cheston vs. The Appeal Tax Court.* The recital (in the court's opinion in that case) from the charter of the *Farmers and Planters Bank,* (the tax on the shares of stock of that bank owned by *Cheston,* being the ground of appeal in that case,) shows that a bonus was to be paid by the bank to the State of *Maryland* as the price of its charter; the recital stating that at the session of December, 1835, the *Farmers and Planters Bank* was incorporated. It was required to pay a bonus and school tax, but the charter contained no exemption from taxation. And notwithstanding the legislative exaction of bonus, the Supreme Court decide that the tax levied by the

State of *Maryland* upon the shares of the stock of that bank, was constitutional and valid.  This decision, it is respectfully suggested, could not have been made consistently with the assumption, that the exaction of the bonus divests the State of the power of levying a tax, on the franchise conferred by the charter.  The Supreme Court seeks to sustain this, its judgment, by declaring that this State tax upon the market value of the shares of bank stock, is no tax upon the franchise, but a tax upon the property owned by the bank.  Is this declaration consistent with the fact?  It is respectfully insisted that it is not.  The question is at once decided by a moment's consideration, of what is, the market value of the shares of the stock of a corporation, the representative?  What are the ingredients of which it is composed?  It is not the mere value of the money and specific articles of property owned by the corporation; but the value of the shares it represents, as well the value of the franchise, as of the other property held under it.  That the franchise is of itself property, is conceded by the Supreme Court, and at the present day could not be the subject of controversy.  That the market value of the shares embraces the value of the franchise, is demonstrated by the notorious fact, that shares of stock frequently have acquired a market value before, by the exercise of the powers conferred by the franchise, the corporation has acquired any property under it.  And in times past, it was no unusual thing to find the shares of stock in a corporation, selling in the market, for twice, three, or more than four times, the value of the shares of stock, if adjusted in reference to the property of the corporation, independently of the value of its franchise.  It necessarily follows, that the value of the franchise, as a part of the property of the corporation, is embraced in the valuation of its shares of stock.  Whilst entirely concurring, for other reasons than some of those assigned, in the matter adjudicated by the Supreme Court, in the case of *Cheston vs. The Appeal Tax Court,* this court does not feel itself bound to conform to a *dictum,* which, it is conceived, rather conflicts with, than sustains the judgment of the Supreme Court.  And, therefore, it regards

the non-payment of a legislative bonus, by the *Baltimore and Ohio Rail-road Company*, as furnishing no stronger ground for an implication of a right in the State of *Maryland* to tax the franchise of the Company, than if it had paid a bonus therefor. But suppose the views expressed of the *dictum* referred to be erroneous, and that this court are to be controlled by it, as a conclusive adjudication by the Supreme Court, the case before us stands exempt from its influence. The Supreme Court have no where intimated, (on the contrary the reverse is the clear deduction from its opinion,) that to a corporation paying no bonus for its charter, the legislature of *Maryland* cannot grant an exemption from taxation. In the case now under consideration, it is conceived that such an exemption has been granted; the 18th section of its charter, the act of 1826, chap. 123, having declared that the shares of the capital stock of the said Company shall be deemed and considered personal estate, and shall be exempt from the imposition of any tax or burden. And there is nothing in the charter of the *Baltimore and Ohio Rail-road Company*, or the terms and expressions in which it is couched, or in the objects designed to be accomplished by it, that would justify a construction of this exemption from taxation, as less comprehensive and universal than its terms would ordinarily import. It must, therefore, be held as an exclusion, not only of the State's right to tax, but of the right of all manner of corporations created by the State, within whose limits the Company may have either real or personal property.

But it is said, that although by the charter of the *Baltimore and Ohio Rail-road Company*, its shares of stock may be exempt from all taxation, yet that such exemption in no wise protects from taxation the specific articles of property of the Company. If such a specific property be deemed liable to the imposition of taxes, no sufficient reason can be assigned why the franchise should not be subject to the like imposition. It is as much an ingredient in the shares of stock, and component part of their value, as is any portion of the corporate property of the Company; and if under such an express legislative

exemption as that now before us, the one be exempt from taxation, so also is the other.

The design contemplated by the legislature in the insertion of this clause of exemption in the act of Assembly, was to confer a certain substantial, not a nominal benefit, on the stockholders, and to induce capitalists to risk their money in a novel and hazardous enterprise. To impute to the legislature, in the case before us, an intention to exempt the shares of the stock from taxation, and at the same time to reserve the right to tax every thing which constituted it a stock, and gave to it its value, would be gratuitously to cast an imputation upon the legislature, inconsistent with every principle of judicial courtesy. If, as has been contended, the legislature designed to retain the right of taxation upon the property of the Company, other than its franchise, it would have expressed its intention in terms about which there would have been no controversy; it would have limited its immunity to the franchise only, not to the shares of stock, which embraces every species of property owned by the company.

The effort made to restrict the immunity now under consideration to State taxes only, cannot be sustained. The terms used in its grant are so broad, unambiguous and universal, and the reasons for making them so accordant therewith, that their full and natural import must be given to them. The exemption covers County and City, as well as State taxes. There are no words used by the legislature qualifying or limiting the extent of the immunity conferred; it is therefore unlike the case of *Mayor and City Council of Baltimore vs. Gordon*, decided by this court at December term, 1847.

It is a matter of notoriety and of history, that in chartering the *Baltimore and Ohio Rail-road Company*, the legislature and the people of *Maryland* regarded the completion of the work as a great State object, tending eminently to promote the future wealth and prosperity of *Maryland*, and particularly of the City of *Baltimore*, and to contribute to the permanence of the union of the *United States*. They also were duly sensible that this gigantic and patriotic undertaking could not be

accomplished but at great expense and hazard of pecuniary loss to its undertakers. As an encouragement to the enterprise they were willing to confer on it every immunity, privilege and exemption which could reasonably be required, and tend to its completion. In expounding, therefore, those provisions of the charter of the Company, by which its expressed privileges and exemptions are imparted, liberal rules of interpretation for its benefit ought to be adopted to effectuate the benevolent designs of the legislature; and not such rules of restriction and limitation as should be applied to the charters of Companies incorporated for the peculiar benefit of their stockholders. To confine the exemption, " from the imposition of any tax or burthen by the States assenting to this law," to State taxes only, would not be consistent with the benevolent designs of the legislature. At that period there were no State taxes; and for their future imposition there then existed no apparent grounds of apprehension.

But it is insisted that conceding the exemption by the charter to have been as broad and comprehensive as it is asserted, yet that by the 15th section of the act of 1835, ch. 395, such exemption was regained by the State, by the stockholders of the *Baltimore and Ohio Rail-road Company* assenting to the provisions of that act of Assembly. The language of the 15th section is as follows:—"And be it enacted, that in case it shall be necessary at any time hereafter to levy a direct tax, for the support of Government, or to sustain the public credit, the same shall be laid according to the 13th Article of the Declaration of Rights, including all goods, wares and merchandise belonging to citizens of this State, ships or vessels in or out of port, monies at interest on mortgage bond or any chose in action, stock and public securities of every description, and all income derived from shares of every incorporated institution or otherwise, as well as every other description of property, real, personal or mixed, which escapes taxation under existing laws, and the faith of the State is hereby pledged to lay the same accordingly, in consideration hereof, and to provide for the payment of interest, and the reimbursements of principal,

38 v.6

of debts to be created in virtue of this act, or of debts which may be created at any subsequent legislature, and all acts, and parts of acts, in contravention of the constitutional and equitable principles herein contained, shall. thenceforward be repealed, abrogated and anulled." By this enactment, it was certainly not the design of the legislature to impair the ability of the *Baltimore and Ohio Rail-road Company*, to comply with its stipulation of paying the six per cent. interest on the $3,000,000 of State bonds, issued for the benefit of the Company. It was not intended to confer new powers, not before possessed by the State, but to pledge the faith of the State to capitalists who might become purchasers of its.bonds, that the powers of taxation already possessed by the State, should, if necessary, be exerted for their benefit, and not to their prejudice. Nobody, at the passage of the act of 1835, then doubted but that the receipts of the State from the profits of the Rail-road Company, would be greater than any amount of taxes it could derive from the shares of stock or property of the Company, when subjected to such taxation, according to the thirteenth article of the Declaration of Rights. And, consequently, it is apparent that the abrogation of the exemption contended for, would have depressed rather than enhanced the value of the State bonds. By the 15th section of the act of 1835, the additional property desired to be brought within the range of taxation, was that which escapes taxation under existing laws. And it would be almost a solecism to say, that property has escaped a taxation with which, constitutionally, it could by no possibility have been visited.

But there is a still more conclusive reason why this court should not adopt the construction of the 15th section of the act of 1835, contended for by the appellants. It would be a wanton and unwarrantable violation of judicial courtesy, in imputing to the legislature an intention to commit a flagrant violation of the Constitution of the *United States;* as, by sanctioning that construction, not only is the exemption of taxation withdrawn from the shares of stock of the *Baltimore and Ohio Rail-road*

*Company*, but also from the shares of stock of the old *Baltimore* banks, and many other corporations enjoying such an exemption, which might be mentioned. And that too, without in any way submitting to such corporations an opportunity oʊ accepting or rejecting the provisions of the act of 1835. For such a judicial discourtesy to the General Assembly, in the case before us, no excuse or apology could be offered. To adopt a construction casting such an imputation upon the legislative intent, is never justifiable but in a case where the enactment is insusceptible of any other rational, legitimate, interpretation. Such, it cannot be insisted, is the condition of the 15th section of the act of 1835.

**THE JUDGMENT OF THE COUNTY COURT IS AFFIRMED.**