THE COUNTY COMMISSIONERS OF ANNE ARUN-
DEL COUNTY AND JOSHUA S. LINTHI-
CUM, LATE TREASURER,

*vs.*

MAYOR, COUNSELOR AND ALDERMEN OF THE
CITY OF ANNAPOLIS AND ANNAP-
OLIS WATER COMPANY.

*Taxation*: *municipal property; City of Annapolis; Annapolis
Water Company.*

When the City of Annapolis, under the power and according
to the provisions of Chapter 86 and Chapter 118 of the Acts of
1912, acquired all the stock of the Annapolis Water Company
and assumed control of the corporation, the stock and property
of the Water Company became the property of the City, and,
under section 4 of Article 81 of the Code, were no longer tax-
able.                                          p. 453

*Decided June 23rd, 1915.*

Appeal from the Circuit Court for Anne Arundel County.
(In Equity.)   (BRASHEARS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE,
THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Edgar Allan Poe,* the Attorney-General, *Ridgely P. Melvin* and *James M. Munroe,* for the appellants.

*Nicholas H. Green* and *Robert Moss,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

In this case the Circuit Court for Anne Arundel County granted a preliminary injunction restraining the commissioners of said county and Joshua S. Linthicum, treasurer of said county and collector of the State, county and school taxes for the year 1912, from "advertising and selling," for the payment of such taxes, the property assessed on the books of said county in the name of the Annapolis Water Company.

A demurrer thereafter interposed to the bill, which was overruled, raised the question, which is the one now before us, whether the property so assessed to the Annapolis Water Company is exempt from taxation under Article 81, section 4, of the Code of Public General Laws, exempting from taxation "property in this State *belonging* to the United States, or to this State or to any county of this State, or *incorporated city or town in this State.*"

The Annapolis Water Company, one of the appellees, was incorporated by the Acts of 1865, Chapter 123, for the purpose and object of supplying the City of Annapolis with pure water for private and public uses. Its capital stock was limited to two thousand shares, each of the par value of five hundred dollars, of which stock the corporation of the City of Annapolis and the State of Maryland were each authorized to subscribe to an amount not to exceed twenty thousand dollars. The company was to be managed by "a president and four directors," elected by the stockholders, each stockholder being entitled to one vote for every share of stock owned by him.

Both the State and City of Annapolis, in the exercise of the authority so conferred upon them, subscribed to the stock of the company and paid in the amounts so subscribed by them respectively. In addition to this, other stock was taken

by persons in their individual capacity. The company was thereafter duly organized and proceeded to exercise its corporate rights and privileges in accordance with the provisions of the Act aforesaid.

Thereafter, Chapter 322 of the Acts of 1904 was passed, providing that

"The Mayor, Counsellor and Aldermen of the City of Annapolis are hereby authorized and empowered to purchase stock of the Annapolis Water Company, in their discretion, whenever the same is for sale, and may borrow for the purchase thereof, and may use said stock as an offset to the debt incurred therefor, and as collateral for the purchase money; provided, that after having purchased stock in the corporate name of the City of Annapolis for the benefit and use of said City, *it shall not be alienated or hypothecated for any other debt whatsoever.*"

Subsequently, Chapters 86 and 118 of the Acts of 1912 were enacted, both of which were approved on the same day. The first of these provides:

"Sec. 2. And be it enacted, That immediately after the passage of this Act a general meeting of the stockholders of the said company shall be called for the purpose of electing directors of said company, and said company shall be managed by a board of directors, elected by the party or parties holding a majority of the stock in said company, consisting of three persons, none of whom need be stockholders in said company, and none of whom except the Mayor, as hereinafter provided, shall be a member of the corporation of Annapolis, and one of said directors shall be elected to serve for six years and who will also act as president of the company by virtue of his election; another director shall be elected for the term of four years, and another director shall be the person who may be the Mayor of the City of Annapolis, and who will serve during his term of office; * * * and all vacancies in said board, whether by death, resignation or other-

wise, shall be filled by the person or persons holding a
majority of the stock of said company."

"Sec. 4.    Be it enacted, That the Mayor, Counsellor
and Aldermen of the City of Annapolis are authorized
and empowered to acquire all the capital stock of the
Annapolis Water Company and *operate said company
under said charter or any enlargement or amendment
thereof to the extent of its stockholding therein.*"

The aforesaid Chapter 118 provides for the issuance of
bonds by the City of Annapolis to the amount of $100,000,
and that such "bonds and the proceeds of sale of the same
shall be used and applied for the purchase of the stock of
the Annapolis Water Company or to pay off the indebtedness
which the said Mayor, Counselor and Aldermen of the City
of Annapolis, or its Finance Commission acting under its
authority, may have assumed in respect to the purchase of
stock of said water company; and the said bonds with the
interest due and to become due thereon, are hereby declared
to be a first lien upon the interest of the Mayor, Counselor
and Aldermen of the City of Annapolis in the stock and
property of the Annapolis Water Company, or its successors,
and the stock of said company owned by the Mayor, Counselor
and Aldermen of the City of Annapolis shall be placed on
the books of said company in the name of the Mayor, Coun-
selor and Aldermen of the City of Annapolis as Trustee, so
long as said bonds are outstanding, as security for the pay-
ment of the said bonds and interest, as and when the same
become payable; and should the said obligation not be paid
as and when the same become payable, then the bondholder's
lien may be enforced as other liens are enforced in equity."

The Act also provides for the creation of a sinking fund of
$2,100 per annum for the redemption and retirement of said
bonds at maturity.    And it was further provided in the Act
that "The said Mayor, Counselor and Aldermen of the City
of Annapolis are hereby required and directed to maintain
such a schedule of charges for water furnished its customers

by the Annapolis Water Company, to be uniform in every particular, as will make the profits accruing to said Mayor, Counselor and Aldermen of the City of Annapolis from its interest in the Annapolis Water Company sufficient in each and every year, to create and maintain the sinking fund to redeem and retire said bonds at maturity and to pay the interest thereon when and as the same may be due and payable."

The bill alleges that in the exercise of the right conferred upon them, "The Mayor, Counselor and Aldermen of the City of Annapolis, on the 28th day of December, in the year 1911, purchased the entire capital stock of the Annapolis Water Company; and this fact is admitted by the demurrer.

As we have said, the only question to be determined upon this appeal is, whether such property is exempt from taxation under the provisions of section 4 of Article 81 of the Code.

In the early case of the *Mayor and City Council of Balti-more* v. the *B. & O. R. R. Co.*, 6 Gill, 292, the claim was made that under the charter of the B. & O. R. R. Co. (Acts of 1826, Chapter 123, section 18), which provides that the *"shares of the capital stock* of said company shall be deemed and considered personal estate, and shall be exempt from the imposition of any tax or burthen," its shares of stock may be exempt from all taxation, but such exemption in nowise protects the specific articles of property of the company from taxation. In discussing such claim our predecessors said: "If such a specific property be deemed liable to the imposition of taxes, no sufficient reason can be assigned why the franchise should not be subject to the like imposition. It is as much an ingredient in the shares of stock, and component part of their value, as is any portion of the corporate property of the company; and if under such an express legislative exemption as that now before us (section 18 of said charter), the one be exempt from taxation, so also is the other." And thereafter in its opinion the Court said the shares of capital stock embrace every species of property owned by the company.

In the case of the *County Commissioners of Anne Arundel County* v. *Annapolis and Elk Ridge R. R. Co.*, 47 Md. 592, the assessors appointed under the General Assessment Law assessed and returned to the County Commissioners of Anne Arundel County all the property of the appellee. The latter, under said Act (section 28), filed a petition to have the property stricken from the assessment list, upon the ground that the Acts of 1836, Ch. 298, by which it was incorporated, had engrafted upon its shares of stock the same exemption from taxation that had been engrafted upon the shares of stock of the Baltimore & Ohio R. R. Co. by its Act of incorporation, Acts of 1826, Chapter 123, section 18, and that the exemption from taxation thus granted, protected forever all the property of the appellee from taxation. The Court, however, held that by a proper construction of section 5 of the Act of 1836, the exemption granted to the B. & O, R. R. Co. by section 18 of its Act of incorporation, was not engrafted upon the shares of the appellee company, but said, speaking through JUDGE ALVEY: "If it be true, as contended by the appellee, that such exemption was made, then * * * it is settled, by repeated decisions of this Court, which we are not disposed to disturb, that the exemption of the shares of the capital stock operates as an exemption of the property of the corporation, or so much of it as the corporation is fairly authorized to hold for the proper exercise of its franchises; and this upon the principle that the shares of the stock in the hands of the shareholders *represent the property* held by the corporation."

In deciding the later case of *State* v. *B. & O. R. R. Co.*, 48 Md. 49, where suit was brought to recover from the appellee a tax imposed by the Act of 1872, Chapter 234, on the gross receipts of all railroads incorporated by, and doing business in, this State, it became necessary for the Court again to construe section 18 of Chapter 123 of the Acts of 1826, incorporating the Baltimore & Ohio R. R. Co. JUDGE ROBINSON, speaking for the Court, said: "This section has been the subject of judicial construction, and it is necessary

therefore in the first place, to understand precisely what has been decided.   In the *Mayor and City Council* v. *The Balt. & Ohio R. R. Co.,* 6 Gill, 292, power to tax the real and personal property, and the capital stock of the company, and its shares of stock in the hands of the shareholders, was the question, and the sole question, before the Court, and after full argument, all the Judges were of opinion that no such power existed, and that the 18th section of the appellee's charter exempted the *property* and capital stock, and shares of stock, from taxation."

The exemption under the aforesaid charter, as expressed by it, referred only to the shares of stock of the company; it was silent as to the property of the company.   Nevertheless, the Court held that in exempting the shares of stock of the company, it exempted as well the property of the company from taxation.   It is true the Court in that case said: "The question, however, is not whether the shares of stock, abstractly considered, embrace and represent the property and franchises of the appellee.   Strictly speaking, it may be true that a shareholder is not the legal owner of any portion of the property of the company, and his shares of stock are evidences only of his right to participate in the business and government of the corporation, and to a proportional share of the profits earned by the company."   This was said, however, with no intention of disturbing the law, as previously laid down, when applied to the case then before it or when applied to cases of the character now being considered by us, and the Court thereafter was careful to say that they were not dealing with abstract definitions, but endeavoring to ascertain how far and to what extent the Legislature meant to exempt the corporation from taxation.   "We are not bound therefore by the literal meaning of the words of the statute, but must look to the connection in which they are used, the subject-matter to which they are applied, and the motives and objects which actuated the Legislature in conferring this privilege on the appellee."

So it is in this case. We are not dealing with abstract definitions, but are endeavoring to ascertain the intention of the Legislature as to its meaning in the use of the term "property *belonging* to any incorporated city or town in this State," and in arriving at such intention we are to consider the motives and objects which actuated the Legislature in the passage of such Act, and the subject-matter to which the term is attempted to be applied.

The motives and objects which actuated the Legislature in the passage of the Act were, no doubt, to relieve the public of the burden of taxation upon property held by it for its use and benefit, and not for the use and benefit of private shareholders, which has been acquired by it through and by the imposition of burdens upon it, either by direct taxation or otherwise.

Under the provisions of the original charter of the appellee company, the City of Annapolis was limited and restricted in the extent to which it was permitted to subscribe to the capital stock of the company, the remainder of the stock was to be issued to the State of Maryland and to individuals in their private capacity, and under these provisions of the charter the company was organized. Subsequently, by successive Acts, it is clearly shown that it was the intention of the Legislature that the City of Annapolis should not only become the owner of the entire stock of the company, but that it should manage, control and operate the company, through the agency therein mentioned, as fully and to the same extent as if the charter of the company had been granted directly to the City.

The subsequent Acts referred to conferred authority upon the City to purchase the entire stock of the company, to be held by it for the benefit and use of said City, and when once purchased it was "not to be alienated or hypothecated for any other debt whatsoever," and under this authority the City acquired the entire stock of the company.

The affairs of the company are managed by three directors, one of whom is the Mayor of the City and the other two are

named by the City.   The Mayor, Counselor and Aldermen of the City are required to fix and maintain the schedule of charges for water furnished to consumers, which are to be uniform in every particular, and the profits accruing therefrom to the City shall be sufficient to create and maintain the sinking fund for the redemption, at maturity, of the bonds issued by the City to purchase said stock, as well as to pay the interest thereon, when and as the same may become due and payable.

Applying the principles of law above stated to the facts of this case, we have no difficulty in reaching the conclusion that not only is the stock of the company owned by the City, but the aforesaid property appearing upon the assessment books of the county in the name of the Water Company belongs to the City of Annapolis, a municipal corporation, within the meaning of section 4 of Article 81 of the Code of Public General Laws of this State, and that such property is exempt from taxation.

The order of the Court below overruling the demurrer to the bill will therefore be affirmed.

*Order affirmed, with costs to the appellee.*