STATE TAX COMMISSION *v.* BALTIMORE
NATIONAL BANK

[No. 39, April Term, 1935.]

*Decided June 18th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William L. Henderson, Assistant Attorney General,* with whom was *Herbert R. O'Conor, Attorney General,* on the brief, for the appellant.

*Edwin F. A. Morgan* and *Gaylord Lee Clark,* with whom were *Semmes, Bowen & Semmes,* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The Baltimore National Bank appealed to the court

below from a ruling of the State Tax Commission denying immunity from taxation for the bank's preferred stock owned by the Reconstruction Finance Corporation, and upholding an assessment of it for state and municipal taxation for the year 1934. The court below reversed the ruling, and the commission now appeals to this court. Code Supp. art. 81, sec. 186 (b).

In pursuance of a plan of reorganization by stockholders of the Baltimore Trust Company, which was not able to resume business after the bank holidays of February 24th to March 4th, 1933, and is in course of liquidation, the Baltimore National Bank was incorporated on August 4th, 1933, to transact the banking business with the aid of the subscription by the Reconstruction Finance Corporation to an issue of preferred stock. Act of Congress January 22nd, 1932, 47 Stat. 5. See U. S. Code Ann., tit. 15, secs. 601, etc. The issue was of 10,000 shares of five per cent. cumulative preferred stock, of a par value of $100 each, and all were taken by the Finance Corporation. They were assessed at their par value. Fifty thousand shares of common stock of a par value of ten dollars each were issued, all except the directors' qualifying shares being held in escrow subject to options of purchase offered in furtherance of the liquidation of the trust company. The shares of the common stock, too, were assessed at their par value.

It is questioned, first, whether the denial of the exemption for the Finance Corporation's stock can be contested for it by the bank, or by any one other than the Finance Corporation itself, which would in theory suffer the detriment. The tax on the shares under the Maryland statutes is assessed and laid on "the several owners thereof, * * * but may be collected in each case from the bank," with a right of reimbursement from the respective stockholders. Code (Supp. 1929), art. 81, sec. 15 (e). And if the bank in the first instance should be called upon to pay taxes on stock not subject to taxation, and therefore not collectible in turn from the stockholders, the bank would seem to have a grievance of its own, in a violation of the

statutes, for which it might properly seek relief in its own name. But it is also the settled practice for a bank or other corporation to litigate a question of taxability on behalf of its stockholders. *Des Moines Nat. Bank v. Fairweather*, 263 U. S. 103, 111, 44 S. Ct. 23, 68 L. Ed. 191; *First Nat. Bank v. Anderson*, 269 U. S. 341, 46 S. Ct. 135, 70 L. Ed. 295; *First Nat. Bank v. Hartford*, 273 U. S. 548, 47 S. Ct. 462, 71 L. Ed. 767; U. S. Code Ann., tit. 12, p. 414. There is no ground for objection to the parties; and, the proceedings being in due form, the question is properly before the court.

In argument of the case it was suggested, but not pressed, that there may be no constitutional power in the federal government through such an agency to participate with private stockholders in the ownership and conduct of a national bank. If for that reason the subscription and holding of the preferred stock should be invalid, the fact would require an affirmance of the decision appealed from, because the stock would not then be outstanding and taxable. The Finance Corporation would not be a stockholder to be taxed. As the point was not pressed, we proceed upon the assumption that the stock is validly held.

The exemption is not provided by the terms of statutes cited. The provision of the Maryland Code, exempting from state taxation any property exempted by the Constitution of the United States, or by any Act of Congress (Code [Supp. 1929], art. 81, sec. 7, subsec. 22) only refers the question to the federal law. The National Banking Act, R. S. sec. 5219, as last amended by an Act of Congress of March 25th, 1926, 44 Stat. 223, R. S. sec. 5219, U. S. Code Ann. tit. 12, sec. 548, is the source of any power to tax the shares of the banks. *People of New York ex rel. Williams v. Weaver*, 100 U. S. 539, 543, 25 L. Ed. 705; *Davis v. Elmira Sav. Bank*, 161 U. S. 275, 283, 16 S. Ct. 502, 40 L. Ed. 700. And it authorizes the states to tax "all the shares of national banking associations" located within their jurisdictions, under specified limitations with which this case is not concerned, and makes

no exceptions or distinctions among stockholders, governmental or otherwise.

An exemption of the Finance Corporation's shares would be by way of an exception to this general statutory permission to tax shares, either a statutory exception or one grounded on the constitutional principles of governmental immunity.

The only statutory provision in which it is sought is the provision in the Act of Congress creating the Finance Corporation (Act of January 22nd, 1932, sec. 10, 47 Stat. 5, 9, U. S. Code Ann. tit. 15, sec. 610), that "the corporation, including its franchise, its capital, reserves, and surplus, and its income shall be exempt from all taxation * * * except that any real property of the corporation shall be subject" to taxation. But this seems to be no more than the exemption applicable to federal agencies generally under the decision in *McCulloch v. Maryland*, 4 Wheat. 316, 4 L. Ed. 579, and although a national bank enjoys the like exemption for its property, it has been held that this does not withdraw from state taxation under section 548 of the Banking Act stock which one national bank may hold in another. *Nat. Bank of Redemption v. Boston*, 125 U. S. 60, 8 S. Ct. 772, 31 L. Ed. 689; *Bank of California v. Richardson*, 248 U. S. 476, 483, 39 S. Ct. 165, 63 L. Ed. 372; *Bank of California v. Roberts*, 248 U. S. 497, 39 S. Ct. 171, 63 L. Ed. 381. We seem not to be permitted then to include the stock held in another corporation within this general exemption of property—unless, indeed, there should be a distinction made of stock which represents ultimately the investment of public funds only.

Could the exception to the Banking Act provision for state taxation of all shares be established by construing that provision to refer only to shares which represent investments ultimately of private funds? This is a question suggested by the fact that at the time of the original enactment of the provision the capital of national banks was expected to be derived only from private sources. "The capital of each of the banks in this system was to

be furnished entirely by private individuals." *Mercantile Nat. Bank v. New York,* 121 U. S. 138, 154, 7 S. Ct. 826, 834, 30 L. Ed. 895. The general immunity of the government, said the court in *McCulloch v. Maryland,* 4 Wheat, 316, 436, 4 L. Ed. 579, "does not extend to a tax paid by the real property of the bank [of the United States], in common with the other real property" in a particular state, "nor to a tax imposed on the [proprietary] interest which the citizens * * * may hold in this institution, in common with other property * * * throughout the State." As the statutory permission is not so restricted in terms, and it has long been regarded as retaining for the states the right to tax all such resources of commerce generally, within their jurisdictions, we do not feel authorized to read into it now a broad exclusion of all investments of ultimately public money. "The manifest intention of the law is to permit the state in which a national bank is located to tax, subject to the limitations prescribed, all the shares of its capital stock without regard to their ownership." *Nat. Bank of Redemption v. Boston,* 125 U. S. 60, 8 S. Ct. 772, 777, 31 L. Ed. 689.

"Two provisions in apparent conflict were adopted. First, the absolute exclusion of power in the states to tax the banks, the national agencies created, so as to prevent all interference with their operations, the integrity of their assets, or the administrative governmental control over their affairs. Second, preservation of the taxing power of the several states so as to prevent any impairment thereof from arising from the existence of the national agencies created, to the end that the financial resources engaged in their development might not be withdrawn from the reach of state taxation, but on the contrary that every resource possessed by the banks as national agencies might in substance and effect remain liable to state taxation. The first aim was attained by the non-recognition of any power whatever in the states to tax the federal agencies, the banks, except as to real estate specially provided for, and, therefore, the exclusion of all such powers. The second was reached by a

recognition of the fact that, considered from the point of view of ultimate and beneficial interest, every available asset possessed or enjoyed by the banks would be owned by their stockholders and would be, therefore, reached by taxation of the stockholders as such." *Bank of California v. Richardson*, 248 U. S. 476, 483, 39 S. Ct. 165, 166, 63 L. Ed. 372.

The question argued is whether the immunity of the national government from state taxation does not render immune the shares owned by this particular governmental agency, and so except them from the general taxation of shares permitted by the Banking Act. It is a question of immunity attaching to a particular stockholder as distinguished from the banking corporation itself. The fact that the bank, too, is a governmental agency, and enjoys immunity for property owned by it, has now no bearing. The immunity to be considered is one which would likewise apply if the shares were those of a state bank or trust company. Exceptions to a general provision may be impressed upon a statute by force of unexpressed general principles. This court has found statutory exemptions extending beyond the letter of statutes, or subject to unexpressed limitations. *Anne Arundel County v. Annapolis*, 126 Md. 445, 95 A. 40; *Havre de Grace v. Bridge Co.*, 145 Md. 491, 497, 125 A. 704. And see *Van Brocklin v. Anderson*, 117 U. S. 151, 173, 6 S. Ct. 670, 29 L. Ed. 845.

There is no precise test for the existence of an exemption by reason of intergovernmental immunity. It is an immunity of either state or national sovereignty from taxation by the other. "Just what instrumentalities of either a state or the federal government are exempt from taxation by the other cannot be stated in terms of universal application." *Metcalf & Eddy v. Mitchell*, 269 U. S. 514, 522, 46 S. Ct. 172, 174, 70 L. Ed. 384. "The exemption of the state's property and its functions from federal taxation is implied from the dual character of our federal system and the necessity of preserving the state in all its efficiency." *South Carolina v. United States*, 199 U. S.

437, 456, 26 S. Ct. 110, 114, 50 L. Ed. 261. The reason for it "is found in the necessary protection of the independence of the national and state governments within their respective spheres under our constitutional system." *Helvering v. Powers,* 293 U. S. 214, 55 S. Ct. 171, 173, 79 L. Ed. 141. See *Fox Film Corp. v. Doyal,* 286 U. S. 123, 128, 52 S. Ct. 546, 76 L. Ed. 1010; *Susquehanna Power Co. v. State Tax Commission,* 283 U. S. 291, 294, 51 S. Ct. 434, 75 L. Ed. 1042; *Flint v. Stone,* 220 U. S. 107, 157, 31 S. Ct. 342, 55 L. Ed. 389; *McCulloch v. Maryland,* 4 Wheat. 316, 4 L. Ed. 579; *Van Brocklin v. Anderson,* 117 U. S. 151, 6 S. Ct. 670, 29 L. Ed. 845. The consequent immunity, says the Supreme Court, has inherent limitations. *Helvering v. Powers, supra.* And it has been decided many times that it does not necessarily attach to property because it is owned by a governmental agency, or even directly by the government, and used in furtherance of a purpose within the government's powers. The immunity is a protection of the function of governing and not all the activities of the sovereignties, state and national, are confined to the performance of that function.

The Finance Corporation, the owner of the stock in this instance, is an agency of governmental origin, one which has a close relationship to the national government as its agency for carrying out the broad purpose of upholding the industries of the country during the depression. The United States owns all its stock. The Secretary of the Treasury is a member of the board of directors; the corporation has the mailing privileges possessed by executive and other departments, and commands the aid of departments and government employees generally. Negotiable obligations which it may issue are guaranteed by the United States. It may act as a depositary of public moneys or as a financial agent of the government. It is required to make periodical reports to Congress. Its purpose and its existence are temporary; it is eventually to be liquidated by its directors, or, if liquidation should be delayed beyond the term of its existence, then

by the Secretary of the Treasury. It is obviously a governmental agency of great power and importance. But even so, there may be no immunity from taxation for particular property owned by the agency. A national bank is a governmental agency, the property and franchises of which are for that reason immune from state taxation, yet stock held by one national bank in another is not so exempt. *Davis v. Elmira Sav. Bank,* 161 U. S. 283, 16 S. Ct. 502, 40 L. Ed. 700; *Nat. Bank of Redemption v. Boston,* 125 U. S. 60, 8 S. Ct. 772, 31 L. Ed. 689; *Bank of California v. Richardson,* 248 U. S. 476, 39 S. Ct. 165, 63 L. Ed. 372; *Bank of California v. Roberts,* 248 U. S. 497, 39 S. Ct. 171, 63 L. Ed. 381. So shares held by a national bank in a Federal Reserve Bank may be taxed by a state. *First Nat. Bank of Cincinnati v. Beaman* (C. C. A.) 257 Fed. 729. And whatever may be the constitutional source of the powers which the Finance Corporation has been formed to exercise, they cannot be distinguished as governmental in any greater degree than those for which the banks are made use of. *McCulloch v. Maryland,* 4 Wheat. 316, 4 L. Ed. 579.

The street railway system of the City of Boston was placed by the State of Massachusetts in the hands of a state board of trustees to manage and operate the system for a stated period on behalf of the public, and this was determined to be a proper exercise of governmental power. *Boston v. Treasurer,* 237 Mass. 403, 413, 130 N. E. 390; *Boston v. Jackson,* 260 U. S. 309, 314, 316, 43 S. Ct. 129, 67 L. Ed. 274. Yet the salaries of the state's trustees were held subject to the federal income tax. *Helvering v. Powers,* 293 U. S. 214, 55 S. Ct. 171, 79 L. Ed. 141. The State of North Dakota incorporated a bank of its own, the "Bank of North Dakota," for the purpose of encouraging and promoting agriculture, commerce, and industry. All the stock was owned by the state, and it was managed by a board of directors composed of the state governor, attorney general, and commissioner of agriculture and labor. There was no question of the governmental power in thus extending aid, but the bank

was held subject to national taxation. *North Dakota v. Olson* (C. C. A). 33 Fed. (2nd) 848. In the cases of *South Carolina v. United States,* 199 U. S. 437, 26 S. Ct. 110, 50 L. Ed. 261, and *Ohio v. Helvering,* 292 U. S. 360, 54 S. Ct. 725, 78 L. Ed. 1307, state dispensaries for the sale of liquors were held subject to national taxation. In *National Home v. Parrish,* 229 U. S. 494, 33 S. Ct. 944, 57 L. Ed. 1296, it was held that the exemption of the government from payment of interest on claims against it did not extend to an incorporated soldiers' home, though it was under the ultimate supervision of Congress. It had a board of managers of its own and a corps of other officers, made contracts in its own name, and in that name disbursed money supplied by the government for its support and maintenance. Property of the government saved from destruction at sea by salvors is held liable to contribution in general average. *The Davis,* 10 Wall. 15, 19 L. Ed. 875. And see *United States v. Strang,* 254 U. S. 491, 41 S. Ct. 165, 65 L. Ed. 368; *Salas v. United States* (C. C. A.) 234 Fed. 842.

Immunity depends upon the nature of the activity in which the government enters its funds or property. "But whether that field of activity, in relation to a State, carries immunity from federal taxation is a question which compels consideration of the nature of the activity, apart from the mere creation of offices for conducting it, and of the fundamental reason for denying federal authority to tax. That reason, as we have frequently said, is found in the necessary protection of the independence of the national and state governments within their respective spheres under our constitutional system. * * * The principle of immunity thus has inherent limitations. * * * And one of these limitations is that the State cannot withdraw sources of revenue from the federal taxing power by engaging in businesses which constitute a departure from usual governmental functions and to which, by reason of their nature, the federal taxing power would normally extend. The fact that the State has power to undertake such enterprises, and that they are undertaken for

what the State conceives to be the public benefit, does not establish immunity. * * * The necessary protection of the independence of the state government is not deemed to go so far. * * * If, in the instant case, the Commonwealth had acquired the property of the company and had organized management of it in perpetuity by the state government, instead of temporarily, or had taken over all the street railways in all its cities for direct operation by the Commonwealth, there would appear to be no ground, under the principles established by the decisions we have cited, for holding that this would effect the withdrawal of the enterprise from the federal taxing power. And the fact that the State has here undertaken public management and operation for a limited time, and under the particular restrictions of the agreement with the company, cannot be said to furnish a ground for immunity." *Helvering v. Powers*, 293 U. S. 214, 55 S. Ct. 171, 173, 79 L. Ed. 141. "While it is evident that in one aspect the extent of the exemption must finally depend upon the effect of the tax upon the functions of the government alleged to be affected by it, still the nature of the governmental agencies or the mode of their constitution may not be disregarded in passing on the question of tax exemption; for it is obvious that an agency may be of such a character or so intimately connected with the exercise of a power or the performance of a duty by the one government, that any taxation of it by the other would be such a direct interference with the functions of government itself as to be plainly beyond the taxing power." *Metcalf & Eddy v. Mitchell*, 269 U. S. 514, 522, 523, 46 S. Ct. 172, 175, 70 L. Ed. 384.

"Whenever," the Supreme Court has said, "a state engages in a business of a private nature, it exercises nongovernmental functions, and the business, though conducted by the state, is not immune from the exercise of the power of taxation which the Constitution vests in the Congress." *Ohio v. Helvering*, 292 U. S. 360, 54 S. Ct. 725, 726, 78 L. Ed. 1307. "It is, we think, a sound principle, that when a government becomes a partner in any

trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted." *Bank of United States v. Planters' Bank of Georgia*, 9 Wheat. 904, 907, 6 L. Ed. 244; *South Carolina v. United States*, 199 U. S. 437, 453, 26 S. Ct. 110, 50 L. Ed. 261. It is not that the incorporation of agencies and their engagement in business activities ordinarily occupied by private interests always render the property of the agencies taxable. The contrary is settled by the decisions on privileges and immunities of corporations made use of by the national government in the exercise of its war powers, the Emergency Fleet Corporation, the Spruce Production Corporation, and the United States Housing Corporation. *Clallam v. United States*, 263 U. S. 341, 44 S. Ct. 121, 68 L. Ed. 328; *Olson v. U. S. Spruce Corporation*, 267 U. S. 462, 45 S. Ct. 357, 69 L. Ed. 738; *Emergency Fleet Corporation v. Western Union*, 275 U. S. 415, 48 S. Ct. 198, 72 L. Ed. 345; *New Brunswick v. United States*, 276 U. S. 547, 48 S. Ct. 371, 72 L. Ed. 693; *U. S. Shipping Board Merchant Fleet Corporation v. Harwood*, 281 U. S. 519, 50 S. Ct. 372, 74 L. Ed. 1011.

The relation to the functions of government, and the scope of the part to be played by the agency in the field into which it has been entered, may make the difference between immunity for one agency and none for the other.

Congress, acting for the national government, has the power to enter a field of private activity for its constitutional purposes to such an extent, great or small, and in such manner, as it finds appropriate; and normal incidents may sometimes be assumed for what it does undertake. In deciding that interest was recoverable on the amount of government insurance of freight advances against war risks, the Supreme Court said: "When the United States went into the insurance business, issued

policies in familiar form and provided that in case of disagreement it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business." *Standard Oil Co. v. United States,* 267 U. S. 76, 79, 45 S. Ct. 211, 212, 69 L. Ed. 519. And as has been seen, property of the government saved from destruction at sea by salvors is held liable to contribution in general average. *The Davis,* 10 Wall. 15, 19 L. Ed. 875. And see *National Home v. Parrish,* 229 U. S. 494, 33 S. Ct. 944, 57 L. Ed. 1296, and *Federal Land Bank v. Priddy,* 295 U. S. 229, 55 S. Ct. 705, 79 L. Ed. 709.

For extending the aid to industries determined upon for the period of the depression, the national government, assuming all necessary constitutional powers, could, as pointed out in argument, have used ordinary departmental executives or officers, without creating a corporation for the work. And the aid might have been extended by gifts or loans. Loans might have been secured by pledges of stock or other property. Always the government would have stood apart, not participating in the business. But a corporation was decided upon as an agency. And instead of making direct gifts, or loans, it was authorized (U. S. Code Ann. tit. 12, sec. 51d), to subscribe to preferred stock in corporations aided, at least when under state laws such stock could be taken free of double liability. The preferred stock is taken with the incidental right to profits, and actual conduct of the business may be taken over. To a greater or less extent the Finance Corporation has been placed in the position of partner in the business aided, whatever that business may be. U. S. Code Ann. tit. 15, secs. 601, 605, 609, etc.; *Continental Ill. Nat Bank & Trust Co. v. Chicago, R. I. & Pac. R. Co.,* 294 U. S. 648, 55 S. Ct. 595, 79 L. Ed. 642; *Bassett v. Merchants' Trust Co.,* 115 Conn., 530, 538, 161 A. 789.

There is some difference in methods of payment of taxes on shares of stock under statutes like those in Maryland. Perhaps in the greater number of instances the corporations pay the taxes as they pay any other corporate obligations. The appellant here quotes a report

of counsel for the Finance Corporation that the officers had been led to believe that as a general rule banks pay the taxes and make no attempt to seek reimbursement. So far as that method is adopted, the tax is practically indistinguishable from a tax on the corporation itself, and the stockholders, Finance Corporation or others, are not directly concerned in it. Exempting some of the shares would mean, not relieving the owners from collections or deductions of taxes, but favoring the corporation by relieving it in part from the common burden of the business, and of giving it an advantage in competition.

We have been unable to see that taxing these shares as usual may, because of the nature and constitution of the agency owning them, interfere with the governing function of the national sovereignty, or carry any possibility of interference. On the contrary, it seems to us that the particular agency is, in the words of the Supreme Court, "engaging in businesses which constitute a departure from usual governmental functions." *Helvering v. Powers*, 293 U. S. 214, 55 S. Ct. 171, 173, 79 L. Ed. 141. After considering the circumstances recited, the activity in which the Finance Corporation is entered by taking the preferred stock, the extent to which it is entered, and the relation to the business of the community, we conclude that no special immunity belongs to this holding of stock such as to require that the stock shall be excepted from the general provision for state taxation.

Our conclusion is contrary to that of two other courts; but we feel constrained to accept that conclusion, with all respect for the opposite one, and set it down with the considerations which have seemed to lead to it.

The decision of the State Tax Commission will be reinstated.

*Order reversed, with costs.*