THE PENNSYLVANIA RAILROAD COMPANY IN MARY-LAND *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Constitutional law—Chartered rights—Obligation of Contracts—Right of Eminent domain—Compensation—Railroads—Act of 1874, ch. 446.*

By the Act of 1874, ch. 446, it was enacted " that all railroads within the State of Maryland which cross or connect with any other road, or which may hereafter be so constructed or built, shall be, and are hereby, required to permit the road so crossing or connecting, to *use their track or roadway* for the passage of the locomotives, cars, and tonnage, at a rate of tolls for passage of trains and tonnage not exceeding the rate per ton per mile, or proportionate part of a mile so used, as is charged for through freight per ton per mile; provided, however, that the right of any road to use the track of any connecting road under this Act shall not be extended to a greater distance than *five miles.*" And the Act further imposed a penalty of not less than $500 or more than $1000 per day upon any

264     MARYLAND ·REPORTS.

Penn. Railroad Co. *vs.* Balt. & Ohio Railroad Co.,

road refusing to comply with its provisions. The Baltimore and Ohio Railroad Company was incorporated by the Act of 1826, ch. 123. There was no provision in the Act, nor in the Constitution then in force, reserving to the Legislature the right to repeal or amend this charter. The eighteenth section of the charter contained, among others, the provision that, " it shall not be lawful for any other company, or any person or persons whatever to travel upon or *use* any of the roads of said company, or to transport persons, merchandise, produce or property of any description whatsoever along said roads or any of them, without the license or permission of the President and Directors of said company; and that *said road or roads*, with all their works, improvements, and profits, and all the machinery of transportation used on said roads are hereby *vested in said company*, incorporated by this Act, and their successors forever." In an action by a railroad company against the said Baltimore and Ohio Railroad Company, to recover the penalty imposed by the Act of 1874, for a violation of its provisions, it was HELD :

1st. That the charter of the defendant was in all its essential features a contract between the State and the corporators, within the protection of the Constitution of the United States, and could not therefore be repealed, or in any manner impaired or affected by any subsequent legislation, to which the company did not give its assent or accept.

2nd. That giving permission to any other company or corporation to use the track or roadway of the defendant for a distance of *five miles* as conferred by the Act of 1874, ch. 446, upon such terms and considerations as the Legislature might see fit to prescribe, was an invasion of the exclusive privilege granted by said clause of the charter.

3rd. That even a crossing of the roadways and tracks of the defendant by another road, and *a fortiori* the use of them for the distance of five miles, could not be lawfully effected against its assent, save by an exercise of the right of eminent domain, and subject to the constitutional mandate that just compensation therefor be first paid or tendered.

4th. That the Legislature in exercising the right of eminent domain, cannot in the law itself fix the compensation to be paid.—Such compensation, in case of disagreement between the parties, must, in this State, be awarded by a jury.

APRIL TERM, 1883. 265

Penn. Railroad Co. *vs.* Balt. & Ohio Railroad Co.

5th. That sec. 23, of said charter which reserved the right to any other road thereafter to be built from the main route to any part of the State to *connect* with the road of the defendant, in no way limited the grant of the exclusive use of its tracks given by sec. 18. The right to *connect* thus reserved, was no such right as that attempted to be given by the Act of 1874.

The plaintiff set up an agreement between the defendant and the Chesapeake and Ohio Canal Co., made in the year 1851, under which, and by virtue of subsequent arrangements between the Canal Company and the plaintiff, the latter claimed the right to transport over one of the tracks of the defendant for the distance of less than one mile, coal and other commodities, in order to deliver the same at the Basin of the Canal Company at Cumberland to be transported to Alexandria in the State of Virginia. HELD:

1st. That assuming this to be true, it did not follow that the defendant by making this agreement with the Canal Company in 1851, rendered itself amenable to the provisions and subject to the penalties provided in the Act of 1874, ch. 446, or that it was the design of this Act to enforce compliance on the part of the defendant with that agreement, or to provide penalties for a failure to observe it.

2nd. That if said agreement had been violated by the defendant, and the plaintiff had a right of action therefor. it could assert it in the proper form, but clearly it could not, by reason of any breach of that contract, recover from the defendant the penalties prescribed by the Act of 1874. Nor could the defendant be held, by having entered into said agreement of 1851, to have accepted by anticipation the Act of 1874, as an amendment to its charter.

APPEAL from the Circuit Court for Garrett County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, YELLOTT, ROBINSON, IRVING, and RITCHIE, J.

*Ferdinand Williams,* and *William Walsh,* for the appellant.

*Hugh L. Bond, Jr.,* and *John K. Cowen,* for the appellee.

MILLER, J., delivered the opinion of the Court.

By the Act of 1874, ch. 446, it was enacted "That all railroads within the State of Maryland, which cross or connect with any other road, or which may hereafter be so constructed or built, shall be, and are hereby required to permit the road so crossing or connecting to *use their track or roadway* for the passage of the locomotives, cars, and tonnage, at a rate of tolls for passage of trains and tonnage not exceeding the rate per ton per mile, or proportionate part of a mile so used, as is charged for through freight per ton per mile; provided, however, that the right of any road to use the track of any connecting road under this Act shall not be extended to a greater distance than *five miles;*" and "if the company of any railroad in this State shall fail or refuse to comply with the provisions of this Act, the party aggrieved shall have the right to recover, upon suit in any Court of this State that has jurisdiction, a sum not less than five hundred or more than one thousand dollars for each day of refusal or neglect."

The Pennsylvania Railroad Company in Maryland, which was incorporated under the free railroad law of 1876, with power to build and operate a railroad from Ellerslie in Allegany County to and within the City of Cumberland, sued the Baltimore and Ohio Railroad Company to recover the *penalty* prescribed by this Act. The declaration alleges, that the plaintiff's road crosses at grade the tracks of the defendant's road at a point near the defendant's viaduct over Will's Creek, in Cumberland, that under the above Act it was entitled to use the tracks and roadways of the defendant on the terms prescribed by the Act, from the point of crossing to the basin wharf of the Chesapeake and Ohio Canal Company, a distance of less than five miles, and that defendant, for the period of one hundred and fifty-three days, refused to permit such use by the plaintiff whereby, and by force of said Act of Assembly an action hath acccued to the plaintiff, to have and

Penn. Railroad Co. *vs.* Balt. & Ohio Railroad Co.

demand of the defendant not less than $500, for each day during which the defendant so refused to permit the plaintiff to use its track or roadway.

To this declaration the defendant pleaded seven pleas, setting up various defences to the action. The plaintiff replied to some of these pleas and demurred to others, and the defendant demurred to the replications. The Court sustained the demurrer to the replications, and overruled it as to the pleas. These pleadings need not be stated at length, for in the view we take of it, the determination of two questions will dispose of the case.

1st. One of the defences relied on and pleaded is that the defendant company is not subject to the operation of this Act of 1874, and in our opinion this defence must be sustained. This company was incorporated by the Act of 1826, ch. 123. There was no provision in this Act nor in the Constitution of the State then in force, reserving to the Legislature the right to repeal or amend this charter, and it was, in all its essential features, a contract between the State and the corporators within the protection of the Constitution of the United States, and could not therefore be repealed, or in any manner impaired or affected by any subsequent legislation to which the company did not give its assent or accept. The 18th section of this charter contains, among others, the provisions that "it shall not be lawful for any other company, or any person or persons whatsoever to travel upon or *use* any of the roads of said company, or to transport persons, merchandise, produce or property of any description whatsoever, along said roads or any of them without the license or permission of the president and directors of said company; and that *said road or roads* with all their works, improvements and profits, and all the machinery of transportation used on said roads are hereby *vested in the said company* incorporated by this Act and their successors forever; and the shares of the capital stock of the said com-

pany shall be deemed and considered personal estate, and shall be exempt from the imposition of any tax or burthen by the States assenting to this law." The last clause here quoted containing the exemption from taxation has been construed by this Court as a contract within the protection of the Constitution of the United States, and that it embraces all the property and franchises of the company, including all lateral roads built under the provisions of the original charter. *State vs. Balto. and Ohio Railroad Co.,* 48 *Md.,* 50. But far more important and far more essential to its existence are the previous clauses which vest in the company the absolute property in the "road or roads" they were authorized to construct, and which give to them the unrestricted control over such roads, and make it unlawful for any other company or person to "travel upon or use them" without *their* license or permission. That these clauses also constitute essential parts of the contract thus protected we entertain no doubt, and the protection must be equally extensive including all lateral roads or tracks built and constructed under the powers conferred by this charter. Now it requires no argument to show that a law which would compel the defendants to permit any other company or corporation "to use their track or roadway for the passage of locomotives, cars, and tonnage" for a distance of *five miles,* upon such terms and considerations as the Legislature might see fit to prescribe, is an invasion of the exclusive privilege granted to the defendant by these clauses of its charter. If such a law be valid as against the defendant, it would be competent for the Legislature to extend this use for the whole distance of the defendant's road so as to work a practical annulment of the most important clauses of its charter. The conflict between the Act of 1874 and these clauses is too obvious to admit of question. In fact, even a crossing of the defendant's roadways and tracks by another road subsequently chartered, and *a fortiori* the use

of them for the distance of five miles, could not be lawfully effected against its assent, save by an exercise by the Legislature of the right of eminent domain, and subject to the constitutional mandate that just compensation therefor be first paid or tendered. *Balto. & Havre de Grace Turnpike Co. vs. Union Railroad Co. of Balto.*, 35 *Md.*, 224; *The Seneca Road Co. vs. Auburn & Rochester Railroad Co.*, 5 *Hill*, 174; *Old Colony & Fall River Railroad Co. vs. County of Plymouth*, 14 *Gray*, 155; *Grand Junction Railroad & Depot Co., et al. vs. County Commissioners of Middlesex, Ibid*, 553; *The Lake Shore & Michigan Southern Railway Co. vs. The Cincinnati, Sandusky & Cleveland Railway Co.*, 30 *Ohio State Rep.*, 604; *Grand Rapids, &c. Railroad Co. vs. Grand Rapids & Indiana Railroad Co.*, 35 *Mich.*, 265; *Jersey City & Bergen Railroad Co. vs. Jersey City & Hoboken Horse Railroad Co.*, 20 *N. J. Eq. Rep.*, 61. The Legislature in exercising the right of eminent domain cannot in the law itself fix the compensation to be paid. Such compensation in case of disagreement between the parties must in this State be awarded by a jury. *Constitution, Art.* 3, *sec.* 40; *Mills on Eminent Domain, sec.* 85; *Cooley on Const. Law*, 563. It is only necessary further to say upon this point that *sec.* 23 of defendant's charter, which reserves the right to any other road thereafter to be built from the main route to any part of the State, to *connect* with the defendant's road, in no way limits the grant of the exclusive use of its tracks given by section 18. The right to *connect* thus reserved is no such right as that attempted to be given by the Act of 1874.

2nd. In one of the replications it is averred that the defendant by the Act of Virginia, of March 6th, 1847, granting it the right of way through that State, was required to establish a depot at the Chesapeake and Ohio Canal Basin, in Cumberland, for the purpose of accommodating and facilitating the transfer of passengers and

freight, from the railroad to the canal, and to the warehouses that might be erected by the Canal Company, or individuals for the accommodation of the trade on the canal, and allow all necessary switches and sidings, with branch tracks to be connected with said switches, to be constructed at the expense of the Canal Company, for the purpose aforesaid ; and that in pursuance thereof, and in consideration of certain rights of way granted by the Canal Company to the defendant, the defendant *agreed* with the Canal Company, on the 14th of January, 1851, that the railroad designed for the purpose of connecting the defendant's road with the basin of the Canal Company, referred to in the Virginia law, was to be made, if desired by the Canal Company, between Hoye's and Shriver's mills, and if made there, the defendant would permit the locomotives and cars of any parties, who might desire to deliver or receive coal or other commodities upon the canal basins, to pass to and fro between them and the Mt. Savage and other railroads, which might join the defendant's road at or near the Mt. Savage road on the east side of Will's creek, where the last mentioned road joins the defendant's road in its extension westwardly from Cumberland, over and upon *one of the tracks* of defendant, to be by it designated and kept in good order for the purpose, and that defendant designated *one of its said tracks*, between the points named for said purpose, and that the *plaintiff* constructed its road to a crossing of the defendant's road, and a connection with the same and with *said track*, at or near the Mt. Savage road on the east side of Will's Creek, where the last named road joins the defendant's road in its extension, westerly from Cumberland, and was ready, and offered, and demanded permission to transport from the crossing and connection aforesaid, over defendant's *said track* to said canal basin, being a distance of less than one mile, coal and other commodities it desired to deliver upon said canal basin to be transported to

Alexandria, in the State of Virginia, and plaintiff says that it had in manner aforesaid, *license and permission* from the defendant to pass over *said portion* of its said railroad as aforesaid.

Now assuming all this to be true, it does not follow that the defendant, by making this agreement with the Canal Company in 1851, rendered itself amenable to the provisions and subject to the penalties provided in the Act of 1874, or that it was the design of this Act, to enforce compliance on the part of the defendant with that agreement, or to provide penalties for a failure to observe it. No such purpose is manifest upon the face of the Act, even if the extraordinary assumption should be made, that the Legislature would have had the power to prescribe such penalties. If this agreement has been violated by the defendant and the plaintiff has a right of action therefor, it can assert it in the proper form, but clearly it cannot by reason of any breach of that contract, recover from the defendant the penalties prescribed by the Act of 1874, nor can the defendant be held, by having entered into this agreement of 1851, to have accepted by anticipation the Act of 1874, as an amendment to its charter. The present suit is not brought upon or for a breach of that agreement, but *solely* for the *penalties* imposed by this statute, and the action must stand or fall as the plaintiff may or may not make out a case entitling it to recover these penalties, and, in our opinion, it is perfectly clear that the Virginia Act of 1847, and this agreement of 1851, cannot be invoked as lending any force or effect whatever to the plaintiff's case, as set out in its declaration.

From these views, and without noticing the other defences set up by the pleas, it follows that this action cannot be maintained, and the judgment below must be affirmed.

*Judgment affirmed.*

(Decided 19th June, 1883.)